UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: PAUL LARRANAGA and
YOLANDA LARRANAGA,                                No. 7-09-13110 JA

      Debtors.
_____

ISABEL CABRERA,

      Plaintiff,

      v.                                                Adv. No. 09-1158 J

PAUL LARRANAGA,

      Defendant.

## MEMORANDUM OPINION

This matter is before the Court on cross motions for summary judgment.[1] Plaintiff Isabel Cabrera filed this adversary proceeding against Paul Larranaga seeking a determination that a debt owed by Mr. Larranaga is non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4).[2] Ms. Cabrera's claim arises as a result of Mr. Larranaga's renovation of a rental property owned by Ms. Cabrera. Ms. Cabrera alleges that Mr. Larranaga performed plumbing and mechanical work without being properly licensed despite having made an implied representation to her that he was properly licensed. She also alleges that Mr. Larranaga improperly paid himself for unlicensed work and for other work not performed in a workmanlike manner, and that he failed to account for funds entrusted to him. Pre-petition, Ms. Cabrera filed

---

[1] On April 20, 2010, Defendant filed a Motion for Summary Judgment ("Larranaga Summary Judgment Motion") (Docket No. 14) and a supporting memorandum (Docket No. 15) to which Plaintiff filed a response on May 7, 2010. (Docket No. 20). On April 23, 2010, Plaintiff filed a Motion for Summary Judgment ("Cabrera Summary Judgment Motion") (Docket No. 17) and a supporting memorandum (Docket No. 18) to which Defendant filed a response on May 17, 2010. (Docket No. 21) and Plaintiff filed a Reply on May 27, 2020 (Docket No. 23).

[2] The non-dischargeability claims consist of an objection to dischargeability under 11 U.S.C. § 523(a)(2)(A) based on fraud or false pretenses, an objection to dischargeability under 11 U.S.C. § 523(a)(4) based on defalcation while acting in a fiduciary capacity, and an objection to dischargeability under 11 U.S.C. § 523(4) based on embezzlement.

suit against Mr. Larranaga in state court and obtained a judgment against him in the amount of $53,974.00. It is this debt that Ms. Cabrera seeks to except from discharge.

After consideration of the pleadings and briefs, the facts, and applicable law, the Court finds that genuine issues of fact exist as to the claim for fraud or false pretenses under 11 U.S.C. § 523(a)(2)(A), that no fiduciary relationship existed between the parties of the type contemplated by 11 U.S.C. § 523(4), and that the evidence establishes that Mr. Larranaga did not embezzle funds. Therefore, the Court will grant summary judgment in favor of Mr. Larranaga on both claims under 11 U.S.C. § 523(4), and deny summary judgment on both motions with respect to the claim under 11 U.S.C. § 523(a)(2)(A).

### A. SUMMARY JUDGMENT STANDARD

It is appropriate for the Court to grant summary judgment if the pleadings, discovery materials, and any affidavits before the Court show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c) made applicable to the adversary proceeding by Fed.R.Bankr.P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A motion for summary judgment may be supported by affidavits, but affidavits are not required. *See* Fed.R.Civ.P. 56(c)(2); Fed.R.Civ.P. 56(a)(A party claiming relieve may move with or without supporting affidavits . . .")(emphasis added). An affidavit offered in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed.R.Civ.P. 56(e)(1). The party opposing a properly supported motion

-2-

Case 09-01158-j    Doc 24    Filed 09/03/10    Entered 09/03/10 15:24:39 Page 2 of 15

for summary judgment, "may not rely merely on allegations or denials" contained in his or her own pleading, but must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). In determining whether to grant a movant's request for summary judgment, the Court must view the facts in the light most favorable to the party opposing summary judgment.[3] While cross-motions for summary judgment suggest that there are no genuine issues of material fact, the Court must nevertheless review the evidentiary materials submitted in support of a motion for summary judgment to ensure that the motion is properly supported by evidence and satisfy itself that summary judgment is appropriate.[4]

B.   **FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE**

The Defendant in his Response to Plaintiff's Motion for Summary Judgment admitted each of the following facts, which, therefore, are not disputed by the parties:

1.   On or about April 24, 1999, Plaintiff Isabel Cabrera entered into a contract with Defendant Paul Larranaga d/b/a Total Equity Builders to renovate a residential structure on her real property. The renovations were to include plumbing and other construction. The total contract price was $31,620.00.

2.   Ms. Cabrera sued Mr. Larranaga on the contract and under the New Mexico Construction Industries Licensing Act in the Second Judicial District Court, Bernalillo County,

---

[3] *Harris v. Beneficial Oklahoma, Inc., (In re Harris),* 209 B.R. 990, 995 (10th Cir. BAP 2007)("When applying this standard, we are instructed to 'examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.' "); *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990)(internal quotation marks omitted); *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994)(stating that the court must "view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party . . .").

[4] *See Crossingham Trust v. Baines (In re Baines),* 337 B.R. 392, 396 (Bankr.D.N.M. 2006)(noting that cross-motions for summary judgment raise an inference that summary judgment may be appropriate)(citations omitted). *See also, Renfro v. City of Emporia,* 948 F.2d 1529, 1534 (10th Cir. 1991)(stating that a cross motion for summary judgment does not relieve the court of its obligation to determine if a genuine issue of material fact exists).

-3-

New Mexico in a case captioned, Cabrera v. Larranaga, Case No. CV-2000-09270 ("State Court Case").

3. A trial on the merits of the State Court Case took place on September 24, 2002.

4. At the time the parties entered into the contract, Mr. Larranaga was doing business as "Total Equity Builders," was the qualifying party for Total Equity Builders for contractor licensing purposes, and held New Mexico contractor's license number GB98028007.

5. Mr. Larranaga represented to Ms. Cabrera in the contract that he would remodel Ms. Cabrera's property on Alcazar NE, Albuquerque, New Mexico ("Property"), including "addition of living/entry room" and "remodel bathroom in apartment." Mr. Larranaga also represented to Ms. Cabrera in the contract that he would "[p]erform all necessary work to upgrade house to comply with electrical and plumbing codes" and "[a]cquire necessary plans, permits, inspections." Mr. Larranaga also represented to Ms. Cabrera that the work would be done in a "workmanlike manner."

6. Ms. Cabrera paid Mr. Larranaga $22,134.00 under the contract.

7. Mr. Larranaga was licensed to do work classified as GB98 and GS19.

8. Mr. Larranaga did not have a license to do work other than work classified as GB98 and the GS19.

9. Neither the GB98 nor the GS19 classification allowed Mr. Larranaga to do plumbing or mechanical construction.

10. Mr. Larranaga undertook installation of a gas water heater on the Property himself.

11. Jim Duncan, an investigator with the City of Albuquerque's Building and Safety Division of the Planning Department, issued a report finding that Mr. Larranaga had done plumbing and gas construction on the Property without required permits or inspections.

12. Mr. Larranaga spoke to Jim Duncan about licensing matters who advised him that while he may have been trying to do "extra work" for Ms. Cabrera, "it doesn't work that way."

13. A permit for electrical work on the Property was obtained. Mr. Larranaga subcontracted the electrical work.

14. No permit was obtained for mechanical work on the Property.

15. No permit was obtained for plumbing work on the Property.

16. Ms. Cabrera had to hire another contractor to redo plumbing and mechanical work on the Property.

17. In closing statements at the trial of the State Court Case, Ms. Cabrera, through her attorney, asked the court to rule that she was entitled to have Mr. Larranaga return the value of the unlicensed work.

18. Ms. Cabrera prevailed in the State Court Case, except that the court denied her recovery for four months' worth of lost rent, which the court reasoned she would have lost anyway even if construction had gone as planned.

19. A judgment was entered in the State Court Case in favor of Ms. Cabrera and against Mr. Larranaga in the amount of $53,974.00, plus interest thereon at the rate of 8.75% per annum.

In addition, no genuine issue has been raised with respect to the following facts.

20. The preprinted portion of the contract provides:

> All material is guaranteed to be as specified, and the above work to be performed in accordance with the drawings and specifications submitted for above work and completed in a substantial workmanlike manner . . ."
> (Docket No. 1 – Complaint to Determine Dischargeability of Debt Under 11 U.S.C. § 523(a)(2)(A) and (a)(4) ("Complaint") - Exhibit A).

21. The contract provides in handwriting that the work will include:

> Perform all necessary work to upgrade house to comply with electrical and plumbing codes.
> (Complaint – Exhibit A).

22. The remodeling project included adding a living room/entry to join together a one-bedroom house with a nearby efficiency apartment, remodeling a bathroom in the apartment, installing windows, installing a water heater, upgrading the house to comply with electrical and plumbing codes, painting walls, doors and trim, and obtaining inspections and permits. Transcript, 11-12 and 19-20; Trial Exhibit A.[5]

23. The plumbing work Defendant personally performed consisted of at least hooking up sinks and hooking up a water heater. (Transcript , 53:6-17)

24. Defendant personally moved a natural gas lines to a stove and a water heater. (Transcript, 19:2-8, 20:20-25.)

25. The Court in the State Court Case awarded damages in the amount of $53,974.00, which is the amount set forth on Trial Exhibit J, less $2,760 of the amount claimed for lost rents. Trial Exhibit J summarizes Plaintiff damages as consisting of:

| | |
|---|---|
| Paid to Larranaga | $ 22,134.00 |
| Value of Larranaga work | (11,000.00) |
| Value of unlicensed work | 4,000 |
| New Contractor | 28,500.00 |
| Cost of 2nd loan | 858.00 |
| Interest costs through sale of property | 5,162.00 |

---

[5] Citations to the Transcript are references to the transcript of the trial of the State Court Case filed of record as Exhibit 1, attached to the Memorandum In Support of Plaintiff's Motion for Summary Judgment. *See* Docket No. 18.

-6-

| | |
|---|---|
| Lost rents | 7,080.00 |
| TOTAL | $56,734.00 |

C. **DISCUSSION**

    1.    <u>Claim Under 11 U.S.C. § 523(a)(2)(A).</u>

A creditor seeking a determination of non-dischargeability under 11 U.S.C. § 523(a)(2)(A) bears the burden of proving, by a preponderance of the evidence, that: 1) the debtor made a false representation; 2) the debtor made the representation with the intent to deceive the creditor; 3) the creditor relied on the representation; 4) the creditor's reliance was justifiable; and 5) the debtor's representation caused the creditor to sustain a loss."[6] "False representations are 'representations knowingly and fraudulently made that give rise to the debt.'"[7] False pretenses, as distinguished from false representations, "involve an implied misrepresentation that is meant to create and foster a false impression."[8] In other words, "a 'false pretense' is an 'implied misrepresentation or conduct which creates and fosters a false impression, as distinguished from a 'false representation' which is an express misrepresentation.'"[9] False pretenses have "also been defined as any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongfully induced to extend money or property to the debtor."[10] A misrepresentation as to a material fact can also be implied

---

[6] *See Fowler Bros v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996) (the required elements under 11 U.S.C. § 523(a)(2)(A) are: "1) [t]he debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was [justifiable]; and the debtor's representation caused the creditor to sustain a loss."); *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d. 351 (1995) (changing the standard of reliance under 11 U.S.C. § 523(a)(2)(A) from "reasonable" to "justifiable."). *See also, In re Riebesell,* 586 F.3d 782, 789 (10th Cir. 2009)(same).
[7] *Adams County Dept. of Soc. Services v. Sutherland-Minor (In re Sutherland-Minor)*, 345 B.R. 348, 354 (Bankr.D.Colo. 2006)(quoting *Cobb v. Lewis (In re Lewis)*, 271 B.R. 877, 885 (10th Cir. BAP 2002)).
[8] *Gordon v. Bruce (In re Bruce)*, 262 B.R. 632, 636 (Bankr. W.D.Pa. 2001) (citing *In re Scarlata*, 127 B.R. 1004, 1009 (N.D. Ill. 1991)).
[9] *Stevens v. Antonious (In re Antonious)*, 358 B.R. 172, 182 (Bankr.E.D.Pa.2006)(quoting *In re Haining,* 119 B.R. 460, 463-464 (Bankr.D.Del. 1990)(remaining citations omitted). *See also, In re Grenier*, 2009 WL 763352, *10 (Bankr.D.Mass. March 19, 2009).
[10] *Antonious,* 358 B.R. at 182 (citing *In re Barr,* 194 B.R. 1009, 1019 (Bankr.N.D.Ill. 1996)).

-7-

by silence when there is a duty of disclosure.[11] The failure of a contractor to disclose to an unsophisticated consumer that he was not licensed to perform the work contracted for constitutes an implied misrepresentation.[12]

The contract provides that the work will include "all necessary work to upgrade house to comply with electrical and plumbing codes." *See* Complaint, Exhibit A. Under New Mexico Administrative Code § 14.5.2.8, issued by the Construction Industries Division of the Regulation and Licensing Department,[13] "[n]o person who is not appropriately, validly and currently licensed by the division is eligible to apply for or be issued a permit under this rule." N.M.A.C. § 14.5.2.8(D).[14] Mr. Larranaga, did, in fact, hold a construction license to act as general contractor. By holding himself out as a contractor qualified to perform remodeling work, and by representing he would obtain all required inspections and permits, Mr. Larranaga impliedly represented that the plumbing and mechanical work on the project would be performed by a person properly licensed to perform the work, which could include a subcontractor, so that the necessary permits could be obtained.

To establish a false representation with intent to deceive within the meaning of 11 U.S.C. § 523(a)(2)(A), Ms. Cabrera must prove that Mr. Larranaga never intended when the parties entered into the contract to retain a subcontractor or other person to perform the plumbing and mechanical work on the project who was properly licensed to perform that work despite knowing

---

[11] *In re Moon*, 1997 WL 34625685, *15 (Bankr E.D.Va. Dec. 17, 1997)("a misrepresentation regarding a material fact may be implied from one's silence.")(citation omitted).

[12] *In re Coots*, 1992 WL 77760, *3 (Bankr E.D. Pa. Apr. 9, 1992). *See also In re Bozzano*, 173 B.R. 990, 994 (Bankr. M.D.N.C. 1994) (a general contractor has a duty to disclose that he does not hold a required contractor's license; a failure to make such disclosure constitutes a misrepresentation); *Grenier*, 2009 WL 763352 at *19 (finding that a contractor has a duty to disclose his lack of a license during negotiations).

[13] Pursuant to N.M.S.A. 1978 § 60-13-9 (2004 Repl. Pamp.) the New Mexico Construction Industries Division is tasked with adopting "rules and regulations necessary to carry out the provisions of the Construction Industries Licensing Act." N.M.S.A. 1978 § 60-13-9(K). *See also* N.M.S.A. 1978 § 60-13-45(D) (2004 Repl. Pamp.) (providing that "[t]he commission shall make rules and regulations pertaining to the issuance of permits . . .").

[14] That code section contains an exception for homeowners; because Mr. Larranaga is a contractor, the exception is not applicable here. *See* N.M.A.C. § 14.5.2.8(D) ("Subject to the provisions of this part, a homeowner's permit may be issued to an unlicensed person.").

-8-

that performance of the work under the contract required a license. *See Antonious*, 358 B.R. at 182 (fraud is established by proof that a contractor entered into a construction contract with the intent of never complying with its terms). Intent to deceive "may be inferred from the totality of the circumstances."[15] "Intent to deceive may be inferred when it is shown that the debtor did not have the intention of performing his obligations under the contract."[16] However, questions of fact concerning a party's intent are difficult to resolve on summary judgment.[17]

Ms. Cabrera asserts that intent to deceive can be inferred by the fact Mr. Larranaga did, in fact, personally perform unlicensed plumbing and mechanical work. The fact that Mr. Larranaga installed a water heater without the required license, coupled with his trial testimony that he did not believe license was necessary to install the water heater, could support an inference that Mr. Larranaga intended when entering into the contract to perform unlicensed work contrary to applicable law. However, because Mr. Larranaga denies he intended to deceive Ms. Cabrera, the Court cannot find as a matter of law that Mr. Larranaga in fact intended to deceive Ms. Cabrera. Mr. Larranaga's credibility must be assessed at trial.[18] Because the Court has determined that summary judgment cannot be granted on the required elements of false representation with intent to deceive, the Court need not address on summary judgment the

---

[15]*Riebesell*, 586 F.3d at 791. *See also, Young*, 91 F.3d at 1375 (stating that fraudulent intent may be inferred based on the "totality of circumstances")(citations and internal quotations omitted); *In re Abraham*, 247 B.R. 479, 483 (Bankr.D.Kan.2000)(stating that "[s]ince a promisor does not usually admit fraudulent intent, the plaintiff must prove circumstances substantial enough to support an inference that there was intent to defraud.")(citation omitted).
[16]*Grenier*, 2009 WL 763352 at *9.
[17]*Compton v. Herrman (In re Herrman)*, 355 B.R. 287, 291 (Bankr.D.Kan.2006)(stating that, "[a]s a general rule, questions involving a person's intent or other state of mind cannot be resolved on summary judgment.")(citing *Prochaska v. Marcoux*, 632 F.2d 848, 851 (10th Cir.1980)(remaining citation omitted). *See also, Sutherland-Minor*, 345 B.R. at 356 (stating that "[e]ven if the Defendant had admitted making false representations, summary judgment is difficult to obtain when the issue is the intent of one of the parties.")(citation omitted).
[18]*See Prochaska v. Marcoux,* 632 F.2d at 851 (noting that "questions of intent, which involve intangible factors including witness credibility, are matters for consideration of the fact finder after a full trial.")(citing *Buell Cabinet Co., Inc. v. Sudduth,* 608 F.2d 431 (10th Cir. 1979)). *See also In re Lucas,* 366 B.R. 332, 338 (Bankr.D.N.M. 2008)(stating that "[r]arely is it appropriate to grant summary judgment on a claim for non-dischargeability based on 11 U.S.C. § 523(a)(2)(A) because intent to defraud often depends on the credibility of witnesses.")(citations omitted).

-9-

remaining elements necessary to a non-dischargeability determination under 11 U.S.C. § 523(a)(2)(A).

### 2. Claim Under U.S.C. §523(a)(4) of Defalcation While Acting in a Fiduciary Capacity

Ms. Cabrera and Mr. Larranaga each seek summary judgment on Ms. Cabrera's claim brought pursuant to 11 U.S.C. § 523(a)(4) which provides, in relevant part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

11 U.S.C. § 523(a)(4).

A finding of non-dischargeability under section 523(a)(4) requires a showing of the following elements: (1) the existence of a fiduciary relationship between the debtor and the objecting party; and (2) a defalcation committed by the debtor in the course of the fiduciary relationship.[19] Whether a fiduciary relationship exists within the meaning of 11 U.S.C. § 523(a)(4) is a threshold inquiry.[20] Because the Court finds that Mr. Larranaga did not act in a fiduciary capacity of the type contemplated by 11 U.S.C. § 523(a)(4), the Court does not reach the question of whether a defalcation occurred.

The fiduciary relationship contemplated by 11 U.S.C. § 523(a)(4) is extremely narrow; it only arises when there is an express or technical trust, and must exist prior to and not as a result

---

[19] *Young,* 91 F.3d at 1371 (stating that, under § 523(a)(4), the must establish "a fiduciary relationship . . . and fraud or defalcation . . . in the course of that fiduciary relationship."); *Watson v. Parker (In re Parker)*, 264 B.R. 685, 700 (10th Cir. BAP 2001)(same); *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie)*, 216 B.R. 283, 286 (10th Cir. BAP 1997)(same).

[20] *See Foxworth Gailbraith Lumber Co. v. Manelos (In re Manelos),* 337 B.R. 409, 412-413 (Bankr.D.N.M. 2006)("Whether there is a fiduciary relationship between Defendant and Plaintiff is a threshold issue to the determination of dischargeability under 11 U.S.C. § 523(a)(4).")(citing *Storie,* 216 B.R. at 286)(remaining citation omitted).

-10-

of the wrongdoing.[21] The general definition of fiduciary, a relationship involving confidence, trust, and good faith, will not suffice for purposes of 11 U.S.C. § 523(a)(4).[22] A technical trust is a trust "imposed by state statutes . . . which may lead to the existence of a fiduciary relationship."[23]

Ms. Cabrera relies on *Crossingham Trust v. Baines (In re Baines),* 337 B.R. 392 (Bankr.D.N.M. 2006) and *Foxworth Gailbraith Lumber Co. v. Manelos (In re Manelos),* 337 B.R. 409 (Bankr.D.N.M. 2006) in asserting that Mr. Larranaga held funds subject to a statutory trust imposed under the New Mexico's Construction Industries Licensing Act.[24] She asserts that she paid him for work performed on the renovation project, and that he breached his fiduciary duty to her by applying such funds in payment of work he personally performed without a

---

[21] *See Duncan v. Neal (In re Neal)*, 324 B.R. 365, 370 (Bankr.W.D.Okla. 2005), *aff'd*, 342 B.R. 384 (10th Cir. BAP 2006)("The Tenth Circuit has taken a very narrow view of the concept of fiduciary duty under this section."); *Holaday v. Seay (In re Seay),* 215 B.R. 780, 785 (10th Cir. BAP 1997)(stating that the court construes narrowly the fiduciary duty contemplated by § 523(a)(4)); *Allen v. Romero In re Romero*, 535 F.2d 618 , 621 (10th Cir.1976) ("[T]he exception under § 17(a)(4) [the predecessor under the former Bankruptcy Act to §523(a)(4)] applies only to technical trusts and not those which the law implies from a contract.")(citation omitted).; *In re Talcott*, 29 B.R. 874 (Bankr.D.Kan.1983)("The fiduciary relationship contemplated in . . . 11 U.S.C. § 523(a)(4) is one arising out of a pre-existing express or technical trust, not implied or constructive trusts.")(citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934)(remaining citations omitted); *Crossingham Trust v. Baines (In re Baines),* 337 B.R. 392, 401 (Bankr.D.N.M. 2006)("the trust cannot arise as a result of the wrongdoing.")(citation omitted); *In re Duncan,* 331 B.R. 70, (Bankr.E.D.N.Y. 2005)(stating that § 523(a)(4) does not apply to "constructive trusts, implied trusts, or trusts implied on the basis of wrongful conduct.")(citation omitted).

[22] *See Young,* 91 F.3d at 1372 (stating that "[n]either a general fiduciary duty of confidence, trust, loyalty and good faith, nor an inequality between the parties' knowledge or bargaining power, is sufficient to establish a fiduciary relationship for purposes of dischargeability.")(citation omitted).

[23] *Neal*, 324 B.R. at 370. *See also, Cundy v. Woods (In re Woods)*, 284 B.R. 282, 288 (D.Colo. 2001)(noting that "[a] technical trust may arise as a result of defined obligations imposed upon the debtor by state or federal statute.")

[24] In *Baines,* the Court held that the duties imposed by N.M.S.A. 1978 § 60-13-23(F) constituted a fiduciary duty within the meaning of § 523(a)(4). *Baines,* 337 B.R. at 403-404. In *Manelos* the Court held that the fiduciary duty imposed on contractors by the New Mexico statute does not extend to the benefit of subcontractors or suppliers to the contractor, such that a subcontractor/ supplier could not sustain a non-dischargeability claim against the contractor-debtor under 11 U.S.C. § 523(a)(4) premised on the state statute. *Manelos,* 337 B.R. at 414 (finding that N.M.S.A. 1978 § 60-13-23(F) should not be construed "to constitute a technical trust imposed by statute upon contractors to create a fiduciary duty owed by the contractor to subcontractors and suppliers that would fall within the meaning of 11 U.S.C. § 523(a)(4).")

-11-

required construction license and which otherwise was substandard.[25] Ms. Cabrera's argument is flawed.

In *Allen v. Romero (In re Romero),* 535 F.2d 618 (10th Cir. 1976), the Tenth Circuit held that under N.M.S.A. 1953 § 67-35-26(G) (1967) a contractor has a fiduciary duty of the type contemplated by a non-dischargeability section of the Bankruptcy Act to assure that money advanced to him is applied in payment for materials and labor relating to the construction project. *Romero,* 535 F.2d at 621.[26] But the New Mexico's Construction Industries Licensing Act does not impose a trust with respect to funds paid to a contractor and applied to work personally performed by the contractor.

The Ms. Cabrera's claim for breach of fiduciary duty as pled in her Complaint is limited to the funds she paid to Mr. Larranaga for the renovation work that Mr. Larranaga applied to work he had personally performed on the project. Consequently, the fiduciary duty imposed by N.M.S.A.1978 § 60-13-23(F) and upheld for purposes of 11 U.S.C. § 523(a)(4) under *Romero* and *Baines* is simply inapplicable to the facts present here.[27] Ms. Cabrera paid another contractor to redo the work Mr. Larranaga performed, but not because Mr. Larranaga failed to pay a subcontractor or material supplier who performed the work from the funds Ms. Cabrera

---

[25] Although a portion of the payments Ms. Cabrera made for the renovation work were used by Mr. Larranaga to pay a licensed electrical subcontractor for electrical work performed on the project, there is no claim of breach of fiduciary duty with respect to that portion of the payments.

[26] The New Mexico statute at issue in *Romero* has since been changed. *Compare* N.M.S.A. 1953 § 67-35-26(G)(1967)(providing that a contractor's license could be revoked or suspended upon "diversion of funds or property received for prosecution or completion of a specific contract, or for a specified purpose in the prosecution or completion of any contract, obligation or purpose) *with* N.M.S.A. 1978 § 60-13-23(F)(Repl. Pamp. 1997)(providing that a contractor's license can be revoked or suspended upon "*conversion* of funds or property received for prosecution or completion of a specific contract . . . " ). In *Baines,* the Court rejected an argument that the change of the term "diversion" to "conversion" mandates a different result than that reached under *Romero. Baines,* 337 B.R. at 402.

[27] Section 60-13-23(F) imposes a fiduciary duty on the part of a contractor to use funds paid it on a project to pay subcontractors and suppliers so that the owner of the project is not subjected to having to pay twice for the same labor or materials (once to the contractor and again to subcontractors and suppliers) in order to discharge liens an unpaid subcontractor may file against the project.

paid to Mr. Larranaga under the contract. Ms. Cabrera's non-dischargeability claim based on an alleged breach of fiduciary duty therefore fails as a matter of law.

### 3. Claim Under U.S.C. §523(a)(4) for Embezzlement

Ms. Cabrera asserts that Mr. Larranaga embezzled funds she paid him for work performed on the renovation project in payment of work he personally performed without a required construction license and which otherwise was substandard. Debts may be held nondischargeable under 11 U.S.C. 523(a)(4) in the absence of a fiduciary duty if the debts arose from embezzlement or larceny.[28]

"For purposes of establishing nondischargeability under section 523(a)(4), embezzlement is defined under federal common law as 'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'"[29] To establish that the debtor fraudulently appropriated property, the plaintiff must establish that the debtor appropriated the property for a use other than that for which it was entrusted[30] or that the

---

[28] *In re Dorado,* 400 B.R. 304, 309 (Bankr.D.N.M. 2008)(citing *Tulsa Spine Hospital, LLC v. Tucker (In re Tucker)*, 346 B.R. 844, 852 (Bankr.E.D.Okla. 2006)(stating that debts may still fall within the exception to discharge under § 523(a)(4) in the absence of a fiduciary relationship when they result from embezzlement or larceny)(remaining citations omitted). Embezzlement is distinguishable from larceny in that "with embezzlement, the debtor initially acquires the property lawfully, whereas '[l]arceny requires that the funds originally come into the Debtor's hands unlawfully.'" *Dorado,* 400 B.R. at 310 (quoting *Bombardier Capital, Inc. v. Tinkler* (*In re Tinkler*), 311 B.R. 869, 876 (Bankr.D.Colo. 2004)(quoting *Webber v. Giarratano (In re Giarratano),* 299 B.R. 328, 338 (Bankr.D.Del. 2003)(additional internal quotation marks and remaining citations omitted).

[29] *In re Wallace*, 840 F.2d 762, 765 (10th Cir. 1998) (citation to quoted case omitted). *See also In re Putvin*, 332 B.R. 619, 627 (10th Cir BAP 2005) ("Under § 523(a)(4) embezzlement will have occurred when there is a 'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come, and it requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud.'"(citation omitted)).

[30] *See*, *e.g. In re Bucci*, 493 F.3d 635, 644 (6th Cir. 2007)("'A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud.'")(quoting *Brady v. McAllister (In re Brady),* 101 F.3d 1165, 1173 (6th Cir. 1996)); *In re Politte*, 2007 WL 4556689, at *2 (Bankr W.D.Ark. Dec. 19, 2007)(stating that "embezzlement is 'the fraudulent appropriation of property of another person by a person to whom such property has been entrusted or into whose hands it has lawfully come.'")(quoting *In re Schultz,* 46 B.R. 880, 889 (Bankr.D.Nev. 1985)).

-13-

debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used,[31] and the circumstances indicate fraud.

Ms. Cabrera has not alleged that Mr. Larranaga appropriated funds for a use other than that for which it was entrusted to him, or that he was not lawfully entitled to use the funds for the purposes for which they were in fact used. Ms. Cabrera paid Mr. Larranaga for services rendered, and the funds were to be applied to amounts owed under the contract. Mr. Larranaga applied the payments to amounts owed under the contract. Payments made for work not performed in a workmanlike manner in breach of contract, or for work performed without a required license, does not transform a breach of contract or fraud claim into a claim for embezzlement.[32]

Based on the foregoing, the Court concludes that summary judgment can be granted in favor of Mr. Larranaga on Ms. Cabrera's non-dischargeability claim under 11 U.S.C. § 523(a)(4). Such claim will be dismissed. Genuine issues of material fact as to Mr. Larranaga's intent to deceive preclude summary judgment on Ms. Cabrera's non-dischargeability claim under 11 U.S.C. § 523(a)(2)(A). An order consistent with this Memorandum Opinion will be entered.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: September 3, 2010

---

[31] *See, e.g., In re Belfry*, 862 F.2d 661, 662 (8th Cir. 1998)("A plaintiff must establish that the debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used."); *In re Murray*, 408 B.R. 268, 275 (Bankr. D.Mo.2009)(to establish a claim for embezzlement, the plaintiff must demonstrate "that the debtor was not lawfully entitled to use the funds for the purpose for which they were in fact used.")(citation omitted).
[32] *Cf. Bucci,* 439 F.3d at 644("a breach of contract, without more, is not embezzlement.").

COPY TO:

Charles R. Hughson                    Charles E. Buckland
Attorney for Plaintiff                Attorney for Defendant
PO Box 1888                           PO Box 8064
Albuquerque, NM  87103                Albuquerque, NM  87198