UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

PAUL LARRANAGA and
YOLANDA P. LARRANAGA,

No. 7-09-13110 JA

     Debtors.

ISABEL CABRERA,

     Plaintiff,

     v.

Adv. No. 09-1158 J

PAUL LARRANAGA,

     Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Complaint to Determine Dischargeability of Debt Under 11 U.S.C. 523(a)(2)(A) and (a)(4)(the "Complaint") filed by Isabel Cabrera, through her counsel of record, Rodey, Dickason, Sloan, Akin & Robb, P.A. (Charles R. Hughson) against Defendant, Paul Larranaga. Mr. Larranaga is represented by Charles E. Buckland.

Ms. Cabrera, dissatisfied with Mr. Larranaga's performance and workmanship on a remodeling project, brought suit against Mr. Larranaga in state court for breach of contract and for performance of plumbing work without a required license. She obtained a judgment against Mr. Larranaga from the state court following an evidentiary trial. The Complaint seeks a determination that the entire state court judgment against Mr. Larranaga is a non-dischargeable debt under 11 U.S.C.§523(a)(2)(A) and 11 U.S.C. §523(a)(4). On September 3, 2010 the Court entered its Memorandum Opinion granting summary judgment in favor of Mr. Larranaga on the

claim under 11 US.C. §523(a)(4). The Court denied summary judgment on the claim under 11 U.S.C.§ 523(a)(2)(A).

The Court held trial on the merits of that claim on November 3, 2010. After considering the evidence, arguments of counsel and the applicable statutory and case law, the Court concludes that Ms. Cabrera's is entitled to recover non-dischargeable damages in the amount of $4,000.00 plus interest thereon, and that the balance of the state court judgment entered in favor of Ms. Cabrera and against Mr. Larranaga is a dischargeable debt.

FACTS

On April 24, 1999, Ms. Cabrera and Mr. Larranaga d.b.a. Total Equity Builders entered into a contract providing for the remodel of Ms. Cabrera's home and an adjacent rental unit (the "Contract"). The remodeling project was to build an "[a]ddition of living/entry room to combine [the] existing house to existing [apartment], as discussed." *See Exhibit 1(Trial Exhibit A).* The Contract further required Mr. Larranaga to upgrade the "house to comply with electrical and plumbing codes," as well as "remodel bathroom in apartment." *Id.* Mr. Larranaga was to furnish materials and perform labor as described in the Contract for a total contract price of $31,620.00. According to its terms, the Contract required payment of 40% upon acceptance, 30% payment after the "roof is installed," and payment of the final 30% due upon completion. Ms. Cabrera paid Mr. Larranaga $12,648.00 on May 20, 1999 to commence the remodeling project. On August 4, 1999, after the roof was installed, Ms. Cabrera paid Mr. Larranaga $9,486.00. At the time the parties entered into the Contract, Mr. Larranaga held a GB98 New Mexico contractor's license number GB98028007.

On August 23, 1999, Ms. Cabrera advised Mr. Larranaga in a letter that she was not satisfied with the timeliness or quality of the work, and that she had contacted the New Mexico

Construction Industries Commission [sic] and City of Albuquerque Code Enforcement office, among others, to complain about Mr. Larranaga's work on the remodeling project. Ms. Cabrera terminated the Contract shortly after learning from a City Code enforcement officer of licensing problems relating to Mr. Larranaga's performance of the remodeling project. She learned of the licensing problems after making the second payment under the Contract.

About a month after Ms. Cabrera terminated the Contract, the City of Albuquerque's Building and Safety Division issued a notice to Mr. Larranaga that a complaint investigator for the City had determined that Mr. Larranaga had performed plumbing and gas work on the remodeling project without required permits or inspections. About three months later the Construction Industries Division of the New Mexico Regulation and Licensing Department, without objection from Mr. Larranaga, revoked his New Mexico contractor's license.

Ms. Cabrera brought suit against Mr. Larranaga in the Second Judicial District Court, Bernalillo County, New Mexico, entitled, *Cabrera v. Larranaga*, Case No. CV-2000-09270 ("State Court Case") for breach of contract and under the New Mexico Construction Industries Licensing Act. A trial on the merits in the State Court Case was held on September 24, 2002. The State Court entered judgment in favor of Ms. Cabrera and against Mr. Larranaga in the amount of $53,974.00, plus interest thereon at the rate of 8.75% per annum. The State Court made findings that Mr. Larranaga performed work on the remodeling project valued at $11,000.00, which included certain work valued at $4,000.00 performed without the required construction license, that it cost Ms Cabrera $28,500 to complete the work on the remodeling project using a different contractor, and that she incurred financing costs and suffered loss of rental income as a result of Mr. Larranaga's breach of contract.

On July 17, 2009, Mr. Larranaga and his spouse filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On October 16, 2009 Ms. Cabrera filed a Complaint seeking a determination by this Court that the judgment from the State Court Case is a non-dischargeable debt.

DISCUSSION

Ms. Cabrera objects to the dischargeability of her state court judgment against Mr. Larranaga under 11 U.S.C. §523(a)(2)(A). She asserts that the Contract was induced by fraud, and that all damages she suffered under the Contract are non-dischargeable.

Under 11 U.S.C. § 523(a)(2)(A) a court may deny a discharge of a debt for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. §523(a)(2)(A). A creditor seeking a determination of non-dischargeability under 11 U.S.C. § 523(a)(2)(A) bears the burden of proving, by a preponderance of the evidence, [1] that: 1) the debtor made a false representation; 2) the debtor made the representation with the intent to deceive the creditor; 3) the creditor relied on the representation; 4) the creditor's reliance was justifiable; and 5) the debtor's representation caused the creditor to sustain a loss." [2] Generally exceptions to discharge are to be construed narrowly, with any doubts resolved in favor of the debtor in permitting the debt to be

---

[1] *In re McCarthy*, 421 B.R. 550, 558-559 (Bankr.D. Colo. 2009) citing *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 657, 112 L.Ed.2d 755 (1991)(the creditor bears the burden of proof under the preponderance of the evidence standard).

[2] *See Fowler Bros v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996) (the required elements under 11 U.S.C. § 523(a)(2)(A) are: "1) [t]he debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was [justifiable]; and the debtor's representation caused the creditor to sustain a loss."); *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d. 351 (1995) (changing the standard of reliance under 11 U.S.C. § 523(a)(2)(A) from "reasonable" to "justifiable."). *See also, In re Riebesell,* 586 F.3d 782, 789 (10th Cir. 2009)(same).

-4-

discharged.[3]  Before addressing whether Ms. Cabrera has satisfied each of the elements of her claim under 11 U.S.C. § 523(a)(2)(A), and if so the appropriate measure of damages, the Court will address what issues or facts have been established by collateral estoppel.

    A.    <u>Collateral Estoppel.</u>

Under the Full Faith and Credit Act,[4] federal courts are required to give full faith and credit to judgments entered by all courts in the United States, meaning that "a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 523, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986).  Thus, when reviewing the preclusive effect of a state court judgment under the mandates of the Full Faith and Credit Act, the court must "look to the preclusion law of the state in which the judgment was rendered."  *In re Putvin,* 332 B.R. 619, 625 (10th Cir. BAP 2005)(citing *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)).  The judgment entered in the State Court Action was entered in the State New Mexico.  Therefore, the Court must look to New Mexico law to determine whether and to what extent the judgment bars relitigation of issues raised in this adversary proceeding.

Under New Mexico law, collateral estoppel applies where the following elements are present: "(1) the party against whom collateral estoppel is asserted must be the same party or be in privity with the party to the original action; (2) the subject matter or the cause of action in the two suits must be different; (3) the ultimate facts or issues must have been actually litigated; and

---

[3] *Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir.1986); *Bank One Columbus, N.A. v. Schad ( In re Kountry Korner Store)*, 221 B.R. 265, 269 (Bankr.N.D.Okla.1998) citing *Bellco First Fed. Cr. Union v. Kaspar ( In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir.1997).

[4] The Full Faith and Credit Act, provides, in relevant part:  "The . . . judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such state . . . ."  28 U.S.C. § 1728.  The Full Faith and Credit Act "codifies the Full Faith and Credit Clause of the Constitution, Art. IV § 1." *Phelps v. Hamilton,* 122 F.3d 1309, 1318 (10th Cir. 1997).

(4) the issue must have been necessarily determined."[5]  Here, all of the elements of collateral estoppel apply to give facts found in the State Court Action preclusive effect in this adversary proceeding.  The State Court Action and this adversary proceeding involve the same parties; the causes of action in the State Court Action and this adversary proceeding are different; the ultimate facts or issues determined in the State Court action were actually litigated; and the issues decided in the State Court Action were necessarily determined.

The following material facts established in the State Court Action are entitled to preclusive effect in this adversary proceeding.  Mr. Larranaga breached the Contract by performing substandard work and work without a required license.  Ms. Cabrera paid Mr. Larranaga a total of $22,134.00 under the Contract, which included $4,000.00 for work performed without a necessary license as required by the New Mexico Construction Industries Licensing Act.[6]  The work Mr. Larranaga performed under the Contract had a value of $11,000.00.  Ms. Cabrera suffered damages totaling $56,734.00 as a result of Mr. Larranaga's breach of the contract, including the cost paid to a contractor to complete the work ($28,500.00), the cost of financing to obtain a loan to complete the work ($6,020.00) and lost rents ($4,320.00).  This Court has relied on collateral estoppel to establish each of these facts.

      B.      <u>False Representation With Intent to Deceive</u>

Ms. Cabrera asserts that Mr. Larranaga fraudulently induced her into entering into the Contract.  According to Ms. Cabrera, Mr. Larranaga agreed in the Contract that he would obtain all necessary construction permits.  He thereby impliedly represented that all work would be

---

[5] *State v. Bishop*, 113 N.M. 732, 734, 832 P.2d 793,795 (N.M. App. 1992); *Reeves v. Wimberly*, 107 N.M. 231, 233, 755 P.2d 75, 78 (N.M.App. 1988)

[6]  The State Court found that Ms. Cabrera paid Mr. Larranaga $22,124.00 under the Contract, which included $4,000 of work designated as "unlicensed work" recoverable as damages "per *Mascarenas v. Jaramillo*." In *Mascarenas v. Jaramillo*, 111 N.M. 410, 414, 806 P.2d 59, 63 1991) the Court held that a contractor must refund payment for work performed without a required construction license regardless of whether the work was performed satisfactorily.

performed with the required construction licenses necessary to obtain the permits. She further asserts that, as a contractor performing work for the public, Mr. Larranga made an implied representation that all work would be performed with all required construction licenses. Ms. Cabrera additionally maintains that these representations were false and made with intent to deceive.

"In cases involving contractor-debtors, there are generally two ways to prove fraud or misrepresentation: (1) show that the debtor entered into the contract with the intent of never complying with the terms; or (2) show that there was an intentional misrepresentation as to a material fact or qualification when soliciting or obtaining the work."[7] The Court will first determine whether Mr. Larranaga induced Ms. Cabrera into entering into the contract by misrepresenting, with intent to deceive, that all work on the remodeling project would be performed by a person properly licensed to perform the work.[8]

"False representations are 'representations knowingly and fraudulently made that give rise to the debt.'"[9] "False pretenses, as distinguished from false representations, "involve an implied misrepresentation that is meant to create and foster a false impression."[10] In other words, "a 'false pretense' is an 'implied misrepresentation or conduct which creates and fosters a false impression, as distinguished from a 'false representation' which is an express

---

[7] *In re Henderson*, 423 B.R. 598,622 (Bankr.N.D.N.Y.,2010)(citing *Commonwealth of Pennsylvania v. Burns (In re Burns)*, 2008 WL 2782659, *3, 2008 Bankr.LEXIS 3924, at *10 (Bankr.M.D.Pa. July 11, 2008)); *Spinoso v. Heilman (In re Heilman)*, 241 B.R. 137, 150 (Bankr.D.Md.1999) ( "For a breach of contract to result in a nondischargeable debt, the debtor must have misrepresented his or her intention to perform contractual duties, which may be inferred if the debtor failed to begin performance."); *Czech v. Sieber (In re Sieber)*, 2009 WL 4017971, 2009 Bankr.LEXIS 886 (Bankr.D.Md. Mar. 30, 2009).
[8] *Burns*, 2008 WL 2782659 at *4.
[9] *Adams County Dept. of Soc. Services v. Sutherland-Minor (In re Sutherland-Minor)*, 345 B.R. 348, 354 (Bankr.D.Colo.2006)(quoting *Cobb v. Lewis (In re Lewis),* 271 B.R. 877, 885 (10th Cir. BAP2002)).
[10] *Gordon v. Bruce (In re Bruce),* 262 B.R. 632, 636 (Bankr.W.D . Pa.2001) (citing *In re Scarlata*, 127 B.R. 1004, 1009 (N.D.Ill.1991)).

misrepresentation."[11] "False pretenses have "also been defined as any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongfully induced to extend money or property to the debtor."[12] A misrepresentation as to a material fact can also be implied by silence when there is a duty of disclosure.[13]

The failure of a contractor to disclose to an unsophisticated consumer that he was not licensed to perform all the work under a construction contract, and did not intend to retain licensed subcontractors to perform work requiring specialty licenses the debtor did not have, constitutes an implied misrepresentation.[14] For the reasons set forth in this Court's opinion in *In re Larranaga*, 2010 WL 3521732, *4 (Bankr. D.N.M. 2010), the Court finds that Mr. Larranaga, by entering into the Contract, impliedly represented that the plumbing and mechanical work on the remodeling project would be performed by a person properly licensed to perform that work, which could include one or more subcontractors. Further, Mr. Larranaga testified at trial that at the time the parties entered into the Contract he informed Ms. Cabrera that he could and would hire subcontractors. Mr. Larranaga's representation that he would hire subcontractors also constituted an implied representation that the subcontractors would be properly licensed to perform their work.

---

[11] *Stevens v. Antonious (In re Antonious),* 358 B.R. 172, 182 (Bankr.E.D.Pa.2006)(quoting *In re Haining*, 119 B.R. 460, 463-464 (Bankr.D.Del.1990)(remaining citations omitted). *See also*, *In re Grenier*, 2009 WL 763352, *10 (Bankr.D.Mass. March 19, 2009).

[12] *Antonious*, 358 B.R. at 182 (citing In re Barr, 194 B.R. 1009, 1019 (Bankr.N.D.Ill.1996)).

[13] *See, In re Moon*, 1997 WL 34625685, * 15 (Bankr E.D.Va. Dec. 17, 1997)("a misrepresentation regarding a material fact may be implied from one's silence.") (citation omitted); *SunTrust Bank v. Brandon (In re Brandon)*, 297 B.R. 308, 313 (Bankr.S.D.GA 2002)("it is well recognized that silence, or the concealment of a material fact, can be the basis of a false impression which creates a misrepresentation actionable under Section 523(a)(2)(A).")(citation omitted).

[14] *See In re Bozzano*, 173 B.R. 990, 994 (Bankr. M.D.N.C. 1994) (a general contractor has a duty to disclose that he does not hold a required contractor's license; a failure to make such disclosure constitutes a misrepresentation); *Grenier*, 2009 WL 763352 at *19 (finding that a contractor has a duty to disclose his lack of a license during negotiations); *In re Coots*, 1992 WL 77760, *3 (Bankr E.D. Pa. Apr. 9, 1992)(The failure of a contractor to disclose to an unsophisticated consumer that he was not licensed to perform all the work contracted for, and did not intend to retain licensed subcontractors to perform work as necessary, constitutes an implied misrepresentation).

Intent to deceive is a question of fact which can be inferred based on the totality of the circumstances.[15] A debtor rarely admits an intent to defraud, thus requiring a plaintiff to satisfy the scienter element through circumstantial evidence from which the court may infer the requisite intent to defraud.[16] A court must consider the totality of the circumstances as of the time the representation was made to determine whether a debtor had a subjective intent to defraud.[17] "Mere concealment of a material fact is not sufficient to prove intent; rather, that concealment must have been made in such a manner as to deceive and mislead."[18]

Ms. Cabrera did not satisfy her burden of proving that Mr. Larranaga made a false representation with intent to deceive to induce her to enter into the Contract. It is uncontroverted that Mr. Larranaga hired an electrical subcontractor who worked on Ms. Cabrera's remodeling project. Mr. Larranaga testified that when he entered into the Contract he intended to hire a plumbing subcontractor to perform the plumbing work on the project, and that he had a couple of subcontractors in mind. He identified several licensed plumbers he uses to perform plumbing work on remodeling projects. The Court finds this testimony credible. Mr. Larranaga intended when the parties entered into the Contract to retain a subcontractor to perform the plumbing work.

Ms. Cabrera asserts, in the alternative, that Mr. Larranaga made a false representation by concealing the fact plumbing work had been performed by a person not properly licensed to

---

[15] *In re Baines*, 337 B.R. 392, 399 (Bankr. D.N.M.,2006)(quoting *Fowler Bros.*, 91 F.3d at 1375 ("[T]he debtor's intent to deceive the creditor in making false representations to the creditor, may be inferred from the 'totality of the circumstances.'"))
[16] *Young*, 91 F.3d at 1375.
[17] *Id.*
[18] *SunTrust Bank v. Brandon (In re Brandon)*, 297 B.R. at 314 (citations omitted); *Wheeling Wholesale Grocery Co. v. Piccolomini (In re Piccolomini)*, 87 B.R. 385, 386-388 (Bankr.W.D.Pa.1988)(debt for goods received by the debtor held non-dischargeable where court determined that debtor induced deliver of goods on COD-only terms but failed to disclose payments would be by post-dated checks.)

perform the work when he solicited the second payment from Ms. Cabrera under the Contract. The Court agrees.

Mr. Larranaga performed plumbing work without the necessary MM98 plumbing license. He failed to disclose to Ms. Cabrera that he performed such work without the required license with intent to deceive for the purpose of inducing her to make a progress payment in August 1999. The Court finds not credible Mr. Larranaga's testimony that the work he performed did not require a licensed plumber, and that he intended to hire a licensed plumber but did not do so because he was let go by Ms. Cabrera before any work requiring such a license was performed. Mr. Larranaga was an experienced contractor who held a GB98 General Contractor's license. He knew or should have known that the scope of construction under the Contract required work he could not perform under his general contractor's license. The plumbing and electrical work under the Contract required a more specialized license, such as an MM98 plumbing license[19] or EE98 electrical license.[20] Further, Mr. Larranaga's testimony before this Court that he did not in fact perform any work required to be performed by a licensed plumber contradicted testimony he gave during the State Court Case admitted into evidence by this Court. *See Exhibit 1, Tr 53-54*. And, in any event, the State Court's finding that Mr. Larranaga performed work valued at $4,000 without a necessary license has preclusive effect in this adversary proceeding. Based on this evidence, the Court finds that Ms. Cabrera has satisfied her burden of proof on the intent to deceive element as it relates to the false representation made by concealing the fact plumbing work had been performed by a person not properly licensed to perform the work to induce Ms. Cabrera to make the progress payment in August 1999.

---

[19] N.M.A.C. §14.6.6.10 (B)1(E).
[20] N.M.A.C. §14.6.6.10 (B)(1)(a).

### C. Justifiable Reliance on the Misrepresentation

The Court must determine whether Ms. Cabrera justifiably relied on the false representation made by concealing the fact plumbing work had been performed by a person who did not have the required construction license. Determining whether there was justifiable reliance requires application of a subjective test in which the court determines whether the creditor's reliance was justified. Although justifiable reliance does not require the creditor to prove that she acted consistent with ordinary prudence and care,[21] the creditor must still use her senses and make a cursory examination or investigation of the facts. *In re Riebesell*, 586 F.3d 782, 792 (10th Cir. 2009).

The Tenth Circuit Court of Appeals has described the justifiable reliance element as follows:

> The appropriate standard is not 'reasonableness' in the sense of whether an objectively reasonable person would have relied upon the debtor's false representations. Rather, the inquiry is whether the actual creditor's reliance was "justifiable" from a subjective standpoint. In determining whether a creditor's reliance was justifiable, a court should therefore examine 'the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than [applying] a community standard of conduct to all cases." Even under the "justifiable" test, however, the plaintiff must 'use his senses' and at least make 'a cursory examination or investigation' of the facts of the transaction before entering into it. Moreover, this test 'does not leave [objective] reasonableness irrelevant, for the greater the distance between the reliance claimed and the limits of the [objectively] reasonable, the greater the doubt about reliance in fact.' In effect, 'reasonableness goes to the probability of actual reliance.'

*In re Riebesell*, 586 F.3d 782, 791-92 (10th Cir. 2009) (internal citations omitted).

The Court finds that Ms. Cabrera justifiably relied on Mr. Larranaga's implied representation that all work had been performed by a properly licensed contractor or subcontractor. Ms. Cabrera was an unsophisticated consumer who retained a licensed contractor

---

[21] *In re Chivers*, 275 B.R. 606, 622 (Bankr.D.Utah 2002)(A party may justifiably rely on a misrepresentation even when he could have ascertained its falsity by conducting an investigation.)

to remodel her residence and an adjacent rental unit. There is no evidence of any red flags that should have caused Ms. Cabrera to be concerned about construction licensing requirements for the remodeling work. Absent any red flags, her retention of a licensed contractor to perform the work was sufficient for her to assume that all work would be performed by properly licensed personnel.

### D. Causation

The final element of 11 U.C.C. § 523(a)(2)(A) requires the creditor to establish that the debt arose as a result of the debtor's fraud. Ms. Cabrera asserts three types of damages resulted from the fraud: 1) $4,000 of the August 1999 progress payment that paid for work performed without a required plumbing license; 2) the balance of the progress payment ($5,486.00 ) that paid for substandard work performed with all required construction licenses; and 3) $38,840.00 paid to complete the project after termination of the Contract and to compensate her for costs to finance the cost to complete and for lost rental income during the completion period.

Causation in non-dischargeability fraud cases requires more than "but-for" causation.[22] For dischargeability purposes, there must be a "direct link" between the alleged fraud and the non-dischargeable debt.[23] The alleged fraud must proximately cause the debt for the debt to be excepted from the discharge under 11 U.S.C. § 523(a)(2)(A). *Hernandez v. Musgrave (In re Musgrave)*, 2011 WL 312883, *9 (10th Cir. BAP 2011).[24]

---

[22] *In re Melcher*, 319 B.R. 761, 773 (Bankr.D.Colo.2004)(*citing United States v. Spicer*, 57 F.3d 1152, 1157 (D.C.Cir.1995), *cert. denied*, 516 U.S. 1043, 116 S.Ct. 701, 133 L.Ed.2d 658 (1996)); *Greenberg v. de Tessieres*, 902 F.2d 1002, 1004 (D.C.Cir.1990) ("but-for" causation is not sufficient to establish common law fraud); *In re Hibbs*, 568 F.2d 347 (3d Cir.1977) ("but-for" causation is not sufficient to establish claim under False Claims Act); Restatement (Second) of Torts § 548A (to establish fraud, fraudulent act must be a "substantial cause" of victim's loss).

[23] *Creta*, 271 B.R. at 218; cited with approval in Musgrave, 2011 WL 312883 at *9.

[24] *Musgrave* is an unpublished decision. In accordance with CTA10 BAP Rule 8018-6, the Court cites *Musgrave* for its persuasive value and not as precedent. *Accord Gem Ravioli, Inc. v. Guiseppe Antonio Creta (In re Creta)*, 271 B.R. 214, 218-219 (1st Cir. BAP 2002).

Proximate cause generally requires the plaintiff to prove two elements: 1) causation in fact; and 2) legal causation. *Id.* at *9-10 (citing Restatement (Second) of Torts §§ 546, 548A).[25] Causation in fact requires that a debtor's misrepresentations be a "substantial factor in determining the course of conduct that results in loss." *Id.* at *10 (citing Restatement (Second) of Torts § 546)[26] Legal causation requires that a creditor's loss be reasonably expected to result from the creditor's reliance on the debtor's misrepresentation. *Id.* at *10 (citing Restatement (Second) of Torts § 548A).[27] The following cases involve disputes between property owner-creditors and contractor-debtors in which the creditors assert non-dischargeability claims based on work performed without a required construction license. The cases are instructive of how to apply the proximate cause requirement to Ms. Cabrera's non-dischargeability claim against Mr. Larranaga.

In *Musgrave*, the debtor misrepresented to the property owner that hired him that he would pay subcontractors, lied about the need for payments to be made by cashier's check and in amounts under $10,000.00, and failed to disclose a bank account to hide misappropriated funds. *Id.* at *10. In reversing the bankruptcy court, the Tenth Circuit Bankruptcy Appellate Panel found that the debtor's misrepresentations were not the proximate cause of various construction defects performed by subcontractors the debtor hired absent any evidence that the debtor knew about the defects or purposely or knowingly hired substandard subcontractors. *Id.*

In *Gem Ravioli, Inc. v. Guiseppe Antonio Creta (In re Creta)*, 271 B.R. 214 (1st Cir. BAP 2002), the creditor hired the debtor to install two refrigeration and air conditioning units. The debtor misrepresented that he had the required license to install the units. Shortly after the debtor installed the units they stopped working. *Id.* at 216. Reversing the bankruptcy court, the

---

[25] *Accord Creta*, 271 B.R. at 219 (citing Restatement (Second) of Torts §§ 546, 548A).
[26] *Accord Creta*, 271 B.R. at 219 (citing Restatement (Second) of Torts §546).
[27] *Accord Creta*, 271 B.R. at 219 (citing Restatement (Second) of Torts §548A).

First Circuit Bankruptcy Appellate Panel found that misrepresentation was the proximate cause of the cost to correct the defective work. *Id.* at 223. Causation in fact existed because the "debtor fraudulently induced the creditor to enter into a transaction by a misrepresentation that goes to the essence of the transaction, *i.e.*, a debtor's training, competency or experience to complete the work contemplated by the transaction . . . ," *Id.* at 220. Legal causation existed because the defects derived directly from the lack of professional qualifications of the debtor; "the debtor did not have the qualifications that would be required of a licensed refrigeration technician in the State of Rhode Island." *Id.* at 222.

In *In re Leger*, 34 B.R. 873 (Bankr. D. Mass. 1983), the creditor and debtor entered into a contract for the debtor to install a 3-ply new roof on his property. The debtor, having run out of funds, installed only a single ply roof, and then misrepresented that he had installed the 3-ply system to induce the debtor to pay the $2,000.00 balance owing under the contract. *Id*. at 875. Thereafter, the roof leaked causing $3,000.00 of water damage. The creditor paid another contractor to repair the water damage, and an additional $5,550.00 to install the type of roof the debtor had agreed to install. *Id*. at 876. The Court found non-dischargeable damages in the amount of $5,000, consisting of the fraudulently induced payment under the contract and the cost to fix the water damage. The Court found that the misrepresentation that a 3-ply roof was installed was made to induce the payment of the balance of the contract price for a 3-ply roof, and therefore was the proximate cause of the creditor's loss suffered by making the payment. *Id*. at 878. The misrepresentation was also the proximate cause of the loss suffered to repair the water damage because if the debtor had told the creditor he had installed only a single ply roof the creditor could have had the roof fixed before it leaked. *Id*. at 878. On the other hand, the

$5,5500.00 paid to complete the roofing job resulted from the debtor's breach of contract, not his misrepresentation, and therefore was not part of the non-dischargeable debt. *Id*. at 878.

    1.  <u>The portion of the progress payment for work performed without a required plumbing license.</u>

This Court finds that Mr. Larranaga's misrepresentation in the form of his fraudulent concealment that he had performed plumbing work without the necessary construction license was the proximate cause of Ms. Cabrera's loss of $4,000.00 she paid for such work. First, causation in fact has been established. Ms. Cabrera terminated the Contract and hired another contractor to complete the remodeling project after learning the plumbing work had been performed without a required plumbing license. If she had learned of the problem before paying for the unlicensed plumbing work, she would have withheld the payment and applied the funds toward the cost to complete charged by the new contractor. Consequently, the misrepresentation was a substantial factor that induced Ms. Cabrera to make the payment and thereby sustain a loss of $4,000.00.

In addition, legal causation has been established with respect to the $4,000.00 paid for plumbing work. The loss resulting from payment for plumbing work performed without the required plumbing license could be reasonably expected to result from Ms. Cabrera's reliance on Mr. Larranaga's implied representation that the work was performed by a licensed plumber.

    2.  <u>The portion of the progress payment for work performed with all required construction licenses.</u>

The Court finds that Mr. Larranaga's misrepresentation was not the proximate cause of Ms. Cabrera's loss of the $5,486.00 balance of the $9,486.00 August 1999 progress payment induced by the misrepresentation. As to that portion of the payment, the causation in fact element of proximate cause is satisfied because, for the reasons explained previously in relation

-15-
Case 09-01158-j    Doc 30    Filed 04/08/11    Entered 04/08/11 15:48:14 Page 15 of 17

to payment for the plumbing work, the misrepresentation was a substantial factor that induced Ms. Cabrera to make the August 1999 progress payment and to sustain a loss in the amount of the $5,486.00 balance of that payment. However, Ms. Cabrera has not satisfied the legal causation requirement as to the $5,486.00 portion of the progress payment. Mr. Larranaga did have a construction license to perform approximately 82% of the work he performed on the remodeling project measured by the portion of the contract price paid, including the work for which the $5,486.00 balance of the progress payment was paid.[28] Ms. Cabrera suffered the loss of $5,486.00 not because work was performed without a plumbing license but because of substandard work performed by personnel holding all required construction licenses. Ms. Cabrera's loss of $5,486.00 could not be reasonably expected to result from Ms. Cabrera's reliance on Mr. Larranaga's implied representation that other work on the project had been performed by a licensed plumber.

       3.   <u>The loss sustained to complete the project and from lost rentals</u>.

Finally, the Court finds that Mr. Larranaga's misrepresentation in the form of his fraudulent concealment that he had performed plumbing work without the necessary construction license was not the proximate cause of Ms. Cabrera's cost to complete the remodeling project, costs incurred to finance the cost to complete or lost rental income during the period of completion. Unlike in *Creta*, the evidence does not establish that the plumbing component of the remodeling project goes to the essence of the Contract. The plumbing work was a relatively small part of the work under the Contract, which included connecting a house to an adjacent apartment, the addition of an entry room, the remodel of a bathroom, new flooring in a dining

---

[28] Ms. Cabrera paid Mr. Larranaga a total of $22,134.00 under the Contract, which according to the findings of the State Court included $4,000.00 for worked performed without a required license. The total contract price was $31,620.00. There is no evidence before the Court regarding what portion of the unperformed work under the Contract required a plumbing license.

room and bathroom, roofing, painting walls and doors, replacing kitchen cabinets, replacing a water heater, and work necessary to upgrade the house to comply with plumbing and electrical codes. There is no evidence before the Court establishing that any amount of the $28,500.00 cost to complete the work was incurred to correct defective plumbing work.[29] Like in *Musgrove and Leger*, the cost to complete the work, including costs associated with the delayed completion, resulted from Mr. Larranaga's breach of contract, not his misrepresentation.

CONCLUSION

Ms. Cabrera's is entitled to recover non-dischargeable damages in the amount of $4,000.00 resulting from Mr. Larranaga's misrepresentation, plus interest thereon accruing under the state court judgment. The balance owing by Mr. Larranaga to Ms. Cabrera under the state court judgment is a dischargeable debt.

This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law under Rule 7052, Fed.R.Bankr.P. An appropriate order will be entered.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Entered on Docket Date: April 8, 2011

Copies to:
Charles R. Hughson
Rodey, Dickason, Sloan, Akin & Robb, P.A
P.O. Box 1888
Albuquerque, NM 87103-1888
*Attorneys for Plaintiff*

Charles E. Buckland
PO Box 8064
Albuquerque, NM 87198-8064
*Attorney for Defendant*

---

[29] The Quotation in evidence from the contractor that completed the remodeling work includes several items for plumbing work. A substantial portion if not all of that work appears to be for plumbing work not yet performed by Mr. Larranaga, not to correct defective plumbing work. And in any event, the Quotation does not break down the portion of the cost to complete attributable to plumbing work.